(No. 37908.—

FORD MOTOR COMPANY, Appellee, *vs.* BERNARD J. KORZEN, County Treasurer, *et al.,* Appellants.—(UNITED STATES OF AMERICA, Intervenor-Appellee.)

*Opinion filed January 22, 1964.—Rehearing denied March 16, 1964.*

DANIEL P. WARD, State's Attorney, of Chicago, (EDWARD J. HLADIS and JOSEPH V. RODDY, Assistant State's Attorneys, of counsel,) for appellants.

ADAMS, WILLIAMSON & TURNEY, of Chicago, (BURKE WILLIAMSON and RUSSELL J. TURNEY, of counsel,) for appellee Ford Motor Company.

JAMES P. O'BRIEN, United States Attorney, of Chicago, and LOUIS F. OBERDORFER, Assistant Attorney General, of Washington, D.C., (JOHN R. HIEBER, Assistant United States Attorney, and LEE A. JACKSON, I. HENRY KUTZ, and ROBERT A. BERNSTEIN, Attorneys for Department of Justice, of counsel,) for appellee United States of America.

Mr. JUSTICE SOLFISBURG delivered the opinion of the court:

This case presents the question of whether certain personal property in the possession of the plaintiff Ford Motor Company is exempt from taxation because title to the property is in the plaintiff-intervenor, United States of America.

Ford commenced an equitable action in the circuit court of Cook County seeking to restrain the defendants from collecting personal property taxes upon the subject property in the principal amount of $1,911,811.95. The action was based upon the theory that the property was owned by the United States and therefore was exempt from taxation. The United States has intervened as a party plaintiff.

The case was tried upon a stipulation of facts and the trial court concluded that the United States was the owner of the property in question and that the property was therefore exempt from taxation by virtue of the constitution of the United States and section 19 of the Revenue Act. (Ill.

Rev. Stat. 1957, chap. 120, par. 500.) The trial court entered a decree granting injunctive relief and defendants have appealed directly to this court.

Defendants contend that the United States holds mere legal title to the property in question, and that such title does not warrant exemption under section 19 of the Revenue Act. They further contend that Ford, rather than the United States, has such ownership in the property to support a valid tax by Cook County without invading the constitutional rights and immunities of the United States.

Plaintiffs insist, however, that the United States was the owner of the property, and that the possessory interest of Ford as a bailee was not subject to tax under Illinois law and was immune from tax under the Federal constitution. Plaintiffs further contend that a tax upon such property would constitute unlawful discrimination against the United States.

On April 1, 1958, the disputed property was in the possession of Ford in Illinois, and legal title was in the United States pursuant to four types of contracts between Ford and the United States Air Force.

The first type of contract is a simple bailment of government property loaned to Ford. Defendants now concede that this property is not taxable and that the collection of the part of the tax attributable to such property was properly enjoined.

The other three contracts deal with items to be manufactured by Ford or acquired by it from nongovernmental sources for the performance of these interrelated contracts. These contracts relate to (1) the manufacture of spare parts, (2) the acquisition of facilities, and (3) the manufacture of engines and acquisition of special tooling.

The spare parts contract and the engine and special tooling contract contain a "Progress Payment Clause." In this clause, a progress payment is defined as a payment "prior to acceptance". This clause prescribes that title to all

material of every description, and at whatever stage of manufacture, which is in the plaintiff's possession and is applicable to these contracts, passes from Ford to the Air Force upon the making of the first progress payment, and title to any such material thereafter acquired or produced by Ford passes to the Air Force upon its acquisition or production by the plaintiff. Before a progress payment can be made, there must be a representation and warranty by the contractor that the property is free and clear of all liens and encumbrances of every kind. In addition to the title-vesting language, the progress payment clause contains elaborate and detailed provisions concerning the possession, use, control, risk of loss, and right of rejection of such material.

Ford is in possession of the material until acceptance of the finished items by the Air Force, and bears the risk of loss, destruction or damage of all materials. Plaintiff Ford has control of the manner in which these materials are applied in the performance of the contracts. It has the right to dispose of current production scrap, subject to the provision that it must credit the Air Force with the amount received therefor. Ford has the right to use the material or dispose of it on terms approved of by the government. The proceeds from any disposition of materials must also be credited to the government.

In addition to the progress payment clause, the special tooling contract was subjected to special provisions. These provisions, though analogous to the progress payment clause, are adapted to the circumstance that the special tools, covered therein, do not themselves enter into the final products, but are merely used in the production of those final products. The use of special tools must be in performance of the contract or with prior written approval of the government.

The acquisition of facilities contract is analogous to the spare parts and special tooling contracts, and includes simi-

lar formal title-vesting language. The subject matter of the contract is apparently manufacturing machinery necessary for the performance of the other contracts. There are no provisions for readily disposing of them during the course of the contract. In lieu of provisions for diverting the material itself to other purposes, this contract makes analogous provisions in the event that the use of the machinery is so diverted. Detailed reports must be filed as to use, so that appropriate charges may be made, and thus the Air Force, as under the other contracts, will not be paying in full for items some of which Ford may have used in fulfilling private contracts. Express provision is made that the contract charges for the machinery shall not include any allowance for amortization or depreciation.

The issue of taxability of such property owned by the government, but in possession of a contractor under contracts similar to the Ford contract, has been raised in several recent cases. *City of Detroit* v. *Murray Corp. of America,* 355 U.S. 489, 2 L. ed. 2d 441, was undoubtedly the precursor of the present litigation. In that case the city of Detroit sought to tax property in possession of Murray Corporation under contractual provisions substantially the same as contained in the Ford-Air Force contracts. The United States Supreme Court reversed the United States Court of Appeals and upheld Michigan's right to tax the property in possession of Murray Corporation. The court based its decision on a construction of the Michigan tax statute, stating at 355 U.S. 493: "(T)he taxes involved here imposed a levy on a private party possessing government property which it was using or processing in the course of its own business. It is not disputed that Michigan law authorizes the taxation of the party in possession under such circumstances."

In the *Murray Corp.* case four justices dissented, arguing that the Michigan *ad valorem* property tax was not upon

possessory interests but upon the property owned by the Federal government.

After that decision the Cook County assessor sent a notice to all taxpayers, citing the *Murray Corp.* case and stating that "taxpayers possessing Government personal property should return the value of said property when submitting their personal property schedules."

In the trial court, and on this appeal, however, defendants have abandoned their reliance on the *Murray Corp.* case, conceding that Illinois law does not authorize *ad valorem* taxation of possessory interests in personal property. They claim instead that the real owner of the property is Ford.

The inapplicability of the *Murray Corp.* case is also pointed out in its sequel in the Michigan courts. Relying on *Murray,* the township of Muskegon assessed property in possession of Continental Motors under similar contracts. The Supreme Court of Michigan examined the *Murray Corp.* case and held that the United States Supreme Court had misinterpreted the Michigan statutes. They struck down the tax on the ground that the Michigan tax, like ours, was upon the owner rather than the possessor of property. *Continental Motors v. Township of Muskegon,* 365 Mich. 191, 112 N.W.2d 429.

It is clear that the constitution and statutes of Illinois, like those of Michigan, authorize an *ad valorem* tax on personal property, and the "owner" of said property on April 1 shall be liable for the tax. (Ill. Const., art. IX, sec. 1; Ill. Rev. Stat. 1957, chap. 120, par. 499, 509.) However, "property of the United States" is declared exempt from taxation. Ill. Rev. Stat. 1957, chap. 120, par. 500.

Defendants now rely chiefly on *American Motors Corp. v. City of Kenosha,* 274 Wis. 315, 80 N.W.2d 363, where the Supreme Court of Wisconsin upheld a tax upon property held under such a partial payment contract. The Wis-

consin tax statute, however, provided that when personal property "shall be in the charge or possession of some person other than the owner or person . beneficially entitled thereto * * * it shall be assessed to the person so in charge or possession of the same." Under such a statute it is understandable that the decision was affirmed by the United States Supreme Court in a *per curiam* memorandum decision with the four dissenters in the *Murray Corp.* case also noting their dissent. *American Motors Corp.* v. *City of Kenosha,* 356 U.S. 21, 2 L. ed. 2d 578.

In similar situations the Supreme Court of California and the Supreme Court of Maryland have denied the State the right to tax such personal property. *General Dynamics Corp.* v. *Los Angeles County,* 51 Cal. 2d 59, 330 P. 2d 794; *Martin Co.* v. *State Tax Com.* 225 Md. 404, 171 A. 2d 479.

In the *Martin Co.* case, the court reviewed the *Murray Corp.* decision and stated:

"On the basis of these decisions and *American Motors Corp.* v. *City of Kenosha,* 356 U.S. 21, 78 S. Ct. 559, 2 L. ed. 2d 578 (affirming *per curiam* the decision of the Supreme Court of Wisconsin, reported in 274 Wis. 315, 80 N.W.2d 363, on the authority of the Murray case), the power of a State and its political subdivisions to tax the interest of the possessor of Government-owned property seems clear, even though here, as in those cases, the economic burden of the tax would fall upon the Government. *Cf. State of Alabama* v. *King & Boozer,* 314 U.S. 1, 62 S. Ct. 43, 86 L. ed. 3; *James* v. *Dravo Contracting Co.* 302 U.S. 134, 58 S. Ct. 208, 82 L. ed. 155. The primary question before us, therefore, is not what this State can do, but what it has done.

"In the Murray Corporation case, it seems to have been assumed in the Supreme Court that title was in the Government, and it was held that the Michigan statute and the city ordinance there involved authorized the taxation of the

contractor's right to use and possess the property, and these rights were held subject to taxation. In view of this holding the affirmance by the Supreme Court of the judgment of the Wisconsin Supreme Court in the *American Motors* case on the basis of the *Murray Corp.* case did not, we think, necessarily rest upon the Wisconsin holding as to ownership.

"Ownership is often spoken of as a bundle of rights. Certainly, rights to possess and to use property are important parts of the bundle, but plainly they may be transferred by the owner to another without divesting himself of ownership. That, we think, is the case here, as it was in General Dynamics, and this leads us to the question here, which is very similar to one in that case, do our statutes tax such interests as those of Martin in Government-owned property?"

The court then concluded, as is conceded here, that the State was not authorized to tax the right to use or possess property owned by another.

Other States have also held that property held under similar contracts is property of the United States and thereby immune from State taxation. *Avco Mfg. Corp.* v. *Connelly*, 145 Conn. 161, 140 A.2d 479; *General Motors Corp.* v. *State Tax Com.* 182 Kans. 237, 320 P.2d 807; *Craig* v. *Ingalls Shipbuilding Corp.* 192 Miss. 254, 5 So. 2d 676.

While defendants have pointed out differences in detail between the government contracts involved in the preceding cases, we do not consider them controlling. While the degree of supervision and control, and the methods of disposition of scrap and other property may vary, the essential pattern is the same. In all the contracts the government has provided for a vesting of title in it, and possession of the property in a contractor for the purpose of performing work for the Federal government under its supervision. We consider the ownership of the Federal government to

be real and substantial, although it has given to the contractor some of the bundle of rights of ownership for a specific purpose. (*Cf. Martin Co.* v. *State Tax Com.* 225 Md. 404, 171 A.2d 479.) We think that this case is unlike *People ex rel. Olmsted* v. *University of Illinois,* 328 Ill. 377, relied upon by defendants. That case involved the taxability of certain farm lands which were conveyed to trustees of the University of Illinois in trust for certain specific purposes. The trustees objected to the assessment of taxes on the property on the ground, *inter alia,* that the property belonged to the State of Illinois. This court held that if an agency of the State holds property as trustee, not for the public, but for specified private persons, such property does not belong to the State so as to exempt it from taxation. *Cf. People ex rel. Gill* v. *Trustees of Schools,* 364 Ill. 131, 136.

Such is not the case here. The United States holds title to the personal property here for the benefit of the public. While it has given to Ford a possessory interest, there is no question as to the capacity in which the government holds title. We do not consider that the *University of Illinois* case aids us in our decision.

We realize that the retention by the government of a mere security or nominal interest does not exempt property from taxation, (*S. R. A., Inc.* v. *Minnesota,* 327 U.S. 558, 90 L. ed. 851; *City of New Brunswick* v. *United States,* 276 U.S. 547, 72 L. ed. 693,) nor does the fact that the burden of the tax will fall upon the United States create immunity. (*Alabama* v. *King & Boozer,* 314 U.S. 1, 86 L. ed. 3.) We are also mindful of the teaching of *Murray Corp.* that the Federal constitution does not prevent Illinois from taxing the possessory interest of one holding government property.

Nevertheless, there can be no doubt that *McCulloch* v. *Maryland,* 4 Wheat. 316, 4 L. ed. 579, still retains sufficient vitality to prevent a State from levying a direct tax upon

the property of the United States without the consent of Congress. (*United States* v. *Allegheny County*, 322 U.S. 174, 88 L. ed. 1209.) It is our conclusion that the present tax is such a direct tax upon property of the United States. Because of this conclusion we need not consider whether a tax upon this property would constitute an unlawful discrimination against the United States.

For the foregoing reasons the decision of the circuit court of Cook County is affirmed.

*Decree affirmed.*