In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-1497

SCOTT AIR FORCE BASE PROPERTIES, LLC,
a limited liability company,

*Plaintiff-Appellant,*

*v.*

COUNTY OF ST. CLAIR, ILLINOIS,
a body corporate and politic,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 07-cv-00773—**J. Phil Gilbert**, *Judge.*

ARGUED SEPTEMBER 26, 2008—DECIDED NOVEMBER 14, 2008

Before RIPPLE, MANION, and SYKES, *Circuit Judges.*

MANION, *Circuit Judge.* Scott Air Force Base Properties, LLC ("the Company"), brought this action against the County of St. Clair, Illinois ("the County") seeking a declaratory judgment that its leasehold interest in two parcels of land located on the Scott Air Force Base is not subject to the property tax which the County assessed. The

district court held that the Tax Injunction Act ("TIA" or "the Act"), 28 U.S.C. § 1341, divested it of subject matter jurisdiction and dismissed the case. The Company has appealed. We affirm.

## I. Background

The Military Housing Privatization Initiative ("MHPI"), enacted in 1996 as part of the National Defense Authorization Act, Pub. L. No. 104-106, § 2801, 110 Stat. 186, 544-51 (codified as amended at 10 U.S.C. §§ 2871-2885), is intended to attract private investment and expertise to build housing for members of the military and their families. Developers submit competitive bids and the federal government leases land to the successful bidder to construct housing developments. This process provides necessary housing on military bases with no capital cost to the government and at the same time supplies the developer with reliable tenants with a housing allowance to pay the rent.

The Company saw this as an attractive opportunity and entered into a lease agreement with the United States through the Secretary of the Air Force, agreeing to construct, operate, and maintain rental housing units for military personnel on land located on the Scott Air Force Base for a term of fifty years. The government also executed to the Company a quit claim deed to improvements on the land and entered into a restrictive covenant and use agreement with the Company.

While this appeared to be an attractive investment opportunity for the Company, the County of St. Clair,

Illinois (where Scott Air Force Base is located) also saw this as an attractive opportunity to obtain some tax revenue. The County added the Company's leasehold interest in two parcels of the leased land to the County's tax assessment rolls and assessed an ad valorem tax[1] in the amount of $15,681,300.00 on the Company's interest in each parcel for the 2007 tax year. In response, the Company filed a complaint for declaratory judgment in the United States District Court for the Southern District of Illinois, asserting that the assessment was contrary to various provisions of the United States Constitution, federal statutory law, and Illinois law, and invoking the district court's subject matter jurisdiction under 28 U.S.C. § 1331. The Company sought a declaratory judgment that its leasehold interest was not subject to the County's assessment and that all transactions entered into under the MHPI were exempt from state taxation.

The County moved to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), contending that the TIA removed the district court's jurisdiction to grant the declaratory relief the Company had requested. In response to the County's motion, the Company argued that the Act's jurisdictional bar did not apply because the declaratory judgment sought by the Company concerned a claim of preemption under federal law.

---

[1] An ad valorem tax is "[a] tax imposed proportionally on the value of something (esp. real property), rather than on its quantity or some other measure." BLACK'S LAW DICTIONARY 1469 (7th ed. 1999).

The district court granted the County's motion to dismiss. The court concluded that because a plain, speedy, and efficient remedy was available to the Company in the Illinois courts to challenge the County's tax assessment, the TIA divested it of jurisdiction to render the declaratory relief which the Company sought.[2] The

---

[2] The County also claimed that inasmuch as the Company had not yet applied for an exemption from Illinois state tax, no actual controversy existed because the Company had not shown it had suffered or would suffer an actual or imminent injury-in-fact. The Company countered that it had suffered an injury-in-fact and that an actual controversy between the parties arose when the County added the leasehold interest in the two parcels to its assessment rolls and assessed the parcels for the 2007 tax year.

The district court did not address these arguments. However, as an alternative to its primary holding on the effect of the TIA, the court did hold that no actual controversy would exist were it to interpret the MHPI apart from the tax assessment because the Company would have no injury-in-fact and the requested interpretation would be an advisory opinion. In so holding, the district court apparently was responding to the Company's argument that it was not seeking to enjoin, suspend, or restrain the County's assessment, levy, and collection of the ad valorem tax but rather was seeking a declaration that the MHPI preempts the County's authority to determine whether it could assess, levy, or collect the tax. The court also concluded that the Company lacked standing to seek a declaratory judgment that the MHPI forbids the assessment of state taxation because such a determination would not necessarily redress the Company's injury.

(continued...)

Company appeals.

## II. Discussion

Our review of the district court's dismissal of the case for want of subject matter jurisdiction is de novo, and we accept all facts stated in the complaint as true and draw all reasonable inferences in the Company's favor. *Newell Operating Co. v. Int'l Union of United Auto., Aerospace, & Agric. Implement Workers of Am.*, 532 F.3d 583, 587 (7th Cir. 2008).

The Company asserts that the district court erred by not addressing two threshold questions before reaching the TIA: 1) whether the subject parcels were under the exclusive legislative jurisdiction of the United States pursuant to Article I, Section 8, Clause 17 of the Constitution, and 2) if so, whether Congress authorized state taxation of the land through the MHPI or the lease agreement the parties entered in accordance with the statute.

In support of its position, the Company cites *Humble Pipe Line Co. v. Waggonner*, 376 U.S. 369 (1964), and *Atlantic Marine Corps Communities, LLC v. Onslow County, North Carolina*, 497 F. Supp. 2d 743 (E.D.N.C. 2007). *Humble Pipe Line* was an appeal from the Supreme Court of Louisi-

---

[2] (...continued)
Because we ultimately conclude that the TIA divested the district court of jurisdiction to hear the case, we need not address any of these issues.

ana where the Supreme Court of the United States considered "whether the United States has such exclusive jurisdiction over a . . . tract of land . . . on which the Barksdale Air Force Base is located that Louisiana is without jurisdiction to levy an ad valorem tax on privately owned property situated on the tract." 376 U.S. at 370. However, the Court did not mention the TIA—nor should it have—because the case was litigated in the Louisiana state courts and never appeared in a district court of the United States. While *Humble Pipe Line* may or may not be of some utility to the Company on the merits of its claims, it has no bearing on the question of the district court's jurisdiction in light of the TIA.

In *Atlantic Marine Corps*, a company had entered into a fifty-year ground lease of certain housing units located on several Marine Corps installations pursuant to the MHPI. 497 F. Supp. 2d at 748. The company sought a declaratory judgment that these properties were under the exclusive jurisdiction of the federal government and thus not subject to ad valorem taxation by two counties. *Id.* at 745-46. The district court found that the properties were not subject to state taxation because they were under the exclusive jurisdiction of the United States which the government had not surrendered in the MHPI. *Id.* at 758. Although *Atlantic Marine Corps* is facially analogous to the instant matter, the Company's reliance upon it is misplaced.

First, the TIA was not mentioned in the *Atlantic Marine Corps* opinion; therefore, the case does not directly

support the Company's argument that threshold questions must be reached before the Act comes into play. Second, to the extent that *Atlantic Marine Corps* may be read to suggest that the TIA has no operative effect until constitutional or other federal issues pertaining to the merits of a case are addressed, we reject that view. Were district courts to declare that properties assessed with state taxes are not subject to such taxes due to the operation of the Constitution or other federal law before reaching the jurisdictional question of the TIA, the Act would be rendered nugatory. Such declarations *on the merits* of cases would effectively "restrain or suspend" state taxation procedures and thereby diminish or encumber rightful state tax revenue—which, as we discuss below, is exactly what the TIA proscribes. Rather, because it potentially divests the district courts of subject matter jurisdiction, the TIA is *itself* a predicate consideration in the jurisdictional determination.[3] "The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) (quoting *Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884)). Indeed, "[i]t is axiomatic that a federal court must assure itself that it possesses jurisdiction over the

---

[3] And, as we discuss below, the application of the TIA turns on the nature and effect of the relief sought when a plaintiff alleges that a state tax is unlawful—not the source of law under which the tax is challenged.

subject matter of an action before it can proceed to take any action respecting the merits of the action." *Cook v. Winfrey*, 141 F.3d 322, 325 (7th Cir. 1998). For these reasons, we find the Company's "threshold questions" argument unpersuasive.

We now consider the TIA, which provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The TIA divests the district courts of subject matter jurisdiction in "cases in which state taxpayers seek federal-court orders enabling them to avoid paying state taxes." *Hibbs v. Winn*, 542 U.S. 88, 107 (2004). Put another way, if the relief sought would diminish or encumber state tax revenue, then the Act bars federal jurisdiction over claims seeking such relief. *Levy v. Pappas*, 510 F.3d 755, 762 (7th Cir. 2007). The TIA strips the district courts of the power to hear suits seeking not only injunctive but also declaratory relief from state taxes. *California v. Grace Brethren Church*, 457 U.S. 393, 411 (1982); *RTC Commercial Assets Trust 1995-NP3-1 v. Phoenix Bond & Indem. Co.*, 169 F.3d 448, 453 (7th Cir. 1999). In addition, the Act applies to *any* state tax, including municipal and local taxes. *Hager v. City of W. Peoria*, 84 F.3d 865, 868 n.1 (7th Cir. 1996). Moreover, the TIA's ambit is not confined by the law under which a state tax is challenged, for even federal constitutional claims do not render the Act inapplicable. *Schneider Transp., Inc. v. Cattanach*, 657 F.2d 128,

131 (7th Cir. 1981).[4]

Of course, as its plain language indicates, the TIA's jurisdictional bar is conditioned upon the availability of a "plain, speedy and efficient remedy" in state court. *Grace Brethren Church*, 457 U.S. at 411. The "plain, speedy and efficient remedy" requirement is construed narrowly. *Id.* at 413. Accordingly, the Supreme Court has held that this provision mandates only that "a state-court remedy meet[ ] certain minimal *procedural* criteria."[5]

---

[4] A few exceptions to the TIA's general rule do exist. The Supreme Court has held that the Act does not bar federal jurisdiction when the United States sues to protect itself or one of its instrumentalities from an unlawful state tax. *Dep't of Employment v. United States*, 385 U.S. 355, 358 (1966). It is apparently still an open question whether an instrumentality of the United States with power analogous to that of a government department or regulatory agency may sue in its own right and evade the Act's jurisdictional bar without the joinder of the United States in the action. *See Arkansas v. Farm Credit Servs. of Cent. Arkansas*, 520 U.S. 821, 831 (1997). Because the United States is not a co-plaintiff in this case and inasmuch as the Company has not claimed that it is an instrumentality of the federal government, we need not consider these exceptions to the TIA.

[5] A remedy is not "plain" if uncertainty regarding its nature exists. *Rosewell*, 450 U.S. at 516-17 (quoting *Tully v. Griffin*, 429 U.S. 68, 76 (1976)). A remedy is not "efficient" if it "imposes . . . unusual hardship . . . [or requires] ineffectual activity or an unnecessary expenditure of time or energy." *Id.* at 518. The Supreme Court has held a state court refund process that takes
(continued...)

*Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 512 (1981). However, the remedy must "provide[ ] the taxpayer with a 'full hearing and judicial determination' at which she may raise any and all constitutional objections to the tax." *Id.* at 514 (quoting *LaSalle Nat'l Bank v. County of Cook*, 312 N.E.2d 252, 255-56 (Ill. 1974)); *accord Hay v. Indiana State Bd. of Tax Comm'rs*, 312 F.3d 876, 880 (7th Cir. 2002). A plaintiff who seeks to surmount the jurisdictional bar of the TIA bears the burden of demonstrating the insufficiency of the remedy available in the state court system. *Amos v. Glynn County Bd. of Tax Assessors*, 347 F.3d 1249, 1256 (11th Cir. 2003); *Chase Manhattan Bank, N.A. v. City & County of San Francisco*, 121 F.3d 557, 559-60 (9th Cir. 1997); *see Franchise Tax Bd. of California v. Alcan Aluminum Ltd.*, 493 U.S. 331, 340-41 (1990); *RTC Commercial Assets Trust*, 169 F.3d at 453-54.

To determine whether the TIA applies, we first need to examine the kind of relief that the Company sought in its complaint. *See Levy*, 510 F.3d at 761-62. In its prayer for relief, the Company asked the district court to "declare [that] the leasehold interest of the Plaintiff is not subject to state taxation" and to "declare [that] all transactions entered into under the [MHPI] are exempt from state taxation[.]" Granting such declaratory relief would doubtless "suspend or restrain the assessment, levy or collection" of the County's ad valorem tax and

---

[5] (...continued)

two years to pursue satisfies the speedy remedy requirement. *Id.* at 520.

would reduce the flow of state tax revenue or tie up rightful tax revenue. *Id.* at 762. Therefore, because the Company was, at bottom, a "state taxpayer[ ] seek[ing] [a] federal-court order[ ] enabling [it] to avoid paying state taxes," the Act divested the district court of subject matter jurisdiction unless a plain, speedy, and efficient remedy was unavailable in the Illinois court system. *Hibbs*, 542 U.S. at 107.

We turn then to the type of remedy available to the Company under Illinois law. The Company does not claim that the Illinois remedy is not plain or speedy. However, the Company does contend that the Illinois remedy is not efficient because it must concurrently pursue two separate administrative avenues in challenging the County's assessment—the exemption application[6] and the valuation protest.[7,8] In support of its

---

[6] Under the Illinois Property Tax Code, a taxpayer who has been assessed on property which he believes to be tax-exempt can apply for an exemption with a local board of review. 35 ILCS 200/16-70. The taxpayer is afforded an opportunity to be heard before the board. *Id.* After the board of review conducts a hearing and forwards a statement of facts to the Department of Revenue, the Department decides whether the property is subject to taxation and informs the board of its decision. *Id.* The taxpayer can then seek review of the decision at a hearing before the Department. *Id.* at 8-35. After the hearing, the Department will render a decision and the taxpayer (if still aggrieved) can petition the Director of the Department of Revenue for a rehearing. *Id.* Once a final administrative deci-

(continued...)

position, the Company cites *Georgia R.R. & Banking Co. v. Redwine*, 342 U.S. 299 (1952), for the proposition that a

---

[6] (...continued)
sion is issued, the taxpayer may seek review in the circuit court for the county in which the property is situated. *Id.* at 8-40. With exceptions not relevant here, the circuit court has original jurisdiction of all justiciable matters. ILL. CONST. art. 6, § 9. An appeal from the circuit court may be taken to the Illinois appellate courts. 35 ILCS 200/8-40; 705 ILCS 25/8.1, 8.2.

[7] The Illinois Property Tax Code also permits a taxpayer to file a written complaint challenging the assessed valuation of property with the local board of review. 35 ILCS 200/16-55. After the tax is paid under protest, an appeal of the board's decision can be taken directly to the circuit court in which the property is located by filing a tax objection complaint. *Id.* at 23-5; 23-10; 23-15; 16-160. The circuit court will then hear all of the taxpayer's objections to the assessment in question. *Id.* at 23-15. An appeal from the circuit court may be taken to the Illinois appellate courts. 705 ILCS 25/8.1, 8.2.

[8] The Company also claims that because under Illinois law a lien securing payment of the taxes became enforceable when the assessments were made, a cloud now rests upon the title to the land which is only removable by multiple proceedings. However, the Company does not indicate what type of proceedings (if indeed they are different from the valuation and exemption ones) would be required to remove such a cloud on title and cites no law in support of such contention. Inasmuch as the Company did not advance this argument in the district court and has failed to sufficiently develop it on appeal, it is waived. *Hojnacki v. Klein-Acosta*, 285 F.3d 544, 549 (7th Cir. 2002).

state court remedy is inefficient when it would require a multiplicity of suits. However, the Company's reliance on this case is misplaced. In *Redwine*, the Supreme Court held that a remedy which would have required the taxpayer to file over 300 claims in fourteen counties in order to assert its lone constitutional claim was not efficient. 342 U.S. at 303. The Court also found inefficient a suit-for-refund remedy that allowed the taxpayer to challenge the actions of only one of four taxing authorities. *Id.* at 301, 303. By contrast, the matter before us potentially implicates only two separate proceedings—a far cry from the onerousness and inefficiency inherent in pursuing 300 claims in *Redwine*. In addition, unlike the remedy in *Redwine*, the Illinois remedy allows the Company to challenge the actions of every taxing authority (in this case, only the County) which has made an assessment. More importantly, unlike the taxpayer in *Redwine*, the Company has not shown that it would have to litigate the *same* claims in the valuation proceeding as in the exemption one.

While it may be true that a remedy that would allow the Company to assert its exemption and valuation challenges to the County's tax assessment in one proceeding would be a relatively more efficient course, the TIA is not so exacting that it requires a state remedy to be the best one conceivable. *Miller v. Bauer*, 517 F.2d 27, 32 (7th Cir. 1975); *cf. Rosewell*, 450 U.S. at 520 (explaining that "[n]owhere in the Tax Injunction Act did Congress suggest that the remedy must be the speediest"). Because the Company has not shown that the Illinois remedy "imposes . . . unusual hardship . . . [or requires] ineffectual

activity or an unnecessary expenditure of time or energy[,]" we cannot say that it is not efficient. *Rosewell*, 450 U.S. at 518.

In addition, we conclude—as did the district court—that the Company would receive a full hearing and judicial determination of its constitutional claims in the Illinois system as set forth in the Illinois Property Tax Code.[9] *Rosewell*, 450 U.S. at 514. Indeed, Illinois case law clearly indicates that Illinois taxpayers are able to litigate their constitutional and other federal-law challenges to state tax matters in the Illinois administrative and judicial system. *See, e.g., McLean v. Dep't of Revenue*, 704 N.E.2d 352, 356, 359 (Ill. 1998); *Rockford Life Ins. Co. v. Dep't of Revenue*, 492 N.E.2d 1278, 1279-83 (Ill. 1986); *LaSalle Nat'l Bank v. County of Cook*, 312 N.E.2d 252, 255-56 (Ill. 1974); *Ford Motor Co. v. Korzen*, 196 N.E.2d 656, 661 (Ill. 1964); *Price Flavoring Extract Co. v. Lindheimer*, 14 N.E.2d 476, 477-78 (Ill. 1938); *Home Interiors & Gifts, Inc. v. Dep't of Revenue*, 741 N.E.2d 998, 1001-03 (Ill. App. Ct. 2001); *Montgomery Ward Life Ins. Co. v. Dep't of Local Gov't Affairs*, 411 N.E.2d 973, 976, 980 (Ill. App. Ct. 1980).

The Company lastly contends that even if the TIA is implicated, "[w]here, as here, a case presents 'facially conclusive claims of federal preemption,' a federal court need not abstain and may decide the preemption question." In support of its position, the Company cites *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350 (1989), *United States v. Commonwealth*

---

[9] *See supra* notes 6-7.

*of Kentucky*, 252 F.3d 816 (6th Cir. 2001), and *Bunning v. Commonwealth*, 42 F.3d 1008 (6th Cir. 1994). These cases are inapposite because all address abstention or preemption doctrines and none involve the TIA. Moreover, when the Act applies, a district court is without subject matter jurisdiction and thus can make no further judicial determination. Put another way, "'[w]ithout jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'" *Steel Co.*, 523 U.S. at 94 (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)). This is precisely what the district court did, and we approve of that decision.

### III. Conclusion

Because a plain, speedy, and efficient remedy was available to the Company in the Illinois courts, the TIA divested the district court of subject matter jurisdiction over the Company's complaint. Accordingly, the district court's dismissal of the action for want of jurisdiction is hereby AFFIRMED.