In the

# United States Court of Appeals
## For the Seventh Circuit

---

Nos. 19-1971 & 19-1979

A.F. MOORE & ASSOCIATES, INC., *et al.*,

*Plaintiffs-Appellants*,

*v.*

MARIA PAPPAS, Cook County Treasurer, *et al.*,

*Defendants-Appellees*.

---

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No.1:18-cv-4888 — **Charles P. Kocoras**, *Judge*.

---

ARGUED DECEMBER 11, 2019 — DECIDED JANUARY 29, 2020

---

Before FLAUM, HAMILTON, and BARRETT, *Circuit Judges*.

BARRETT, *Circuit Judge*. The Equal Protection Clause entitles owners of similarly situated property to roughly equal tax treatment. *Allegheny Pittsburgh Coal Co. v. Cty. Comm'n*, 488 U.S. 336, 345–46 (1989). A group of taxpayers asserts that the tax assessor for Cook County violated that guarantee by assessing their properties at the rates mandated by local ordinance while cutting a break to other owners of similarly situated property. The taxpayers pursued a refund in Illinois

court, where they remain tied up in litigation after more than a decade. Frustrated, they turned to federal court for relief, arguing that Illinois's procedural rules for challenging property taxes prevent them from proving their federal constitutional claims in state court. The district court disagreed and held that the Tax Injunction Act, 28 U.S.C. § 1341, barred their federal suit. The Act strips federal district courts of jurisdiction over challenges to state and local taxes as long as the taxpayer has an adequate forum in state court to raise all constitutional claims. This appeal concerns whether Illinois courts offer a sufficient forum. The issue is made simpler by the County's concession that Illinois's tax-objection procedures do not allow the taxpayers to raise their constitutional claims in state court. We are left to conclude that this is the rare case in which taxpayers lack an adequate state-court remedy. The Tax Injunction Act therefore does not bar the taxpayers' federal suit, so we reverse the district court's dismissal.

## I.

In our review of the district court's dismissal for lack of subject-matter jurisdiction, we take as true the allegations in the taxpayers' complaint. *Scott Air Force Base Props., LLC v. County of St. Clair*, 548 F.3d 516, 519 (7th Cir. 2008).

Cook County prescribes tax assessment rates for different categories of real estate. Before 2008, a County ordinance required the County Assessor to assess single-family residential property at 16% of the market value, commercial property at 38% of the market value, and industrial property at 36% of the market value. But between 2000 and 2008, the Assessor in fact assessed most of the property in those three categories at rates significantly lower than the rates prescribed by law. Cook County officials were candid about the discrepancy between

the de jure rates and the de facto rates. In April 2008, the Assessor proposed an ordinance that would "recalibrate" the classification system to "more closely reflect the current relationship between assessment and market value." And one of the ordinance's primary sponsors on the Cook County Board of Commissioners advocated for the recalibration in clear terms: "We have known for years, forever, and pretended that it is not true [and] that somehow the assessments were at the statutory levels; they are not. This reflects the actual reality as best we know it."

Although most property was assessed at the lower de facto rates, a minority was assessed at the de jure rates or even higher. A.F. Moore & Associates and the other plaintiffs in this case count their properties in that minority. Their assessment rates may have been lawful under the letter of the ordinance, but they were significantly higher than the de facto rates that most other property owners enjoyed. These taxpayers calculate that they paid millions of dollars more in property taxes during the period from 2000 to 2008 than they would have if they were assessed at the de facto rates.

Believing that discrepancy to be unlawful, the taxpayers sought a refund in Illinois state court. The taxpayers followed Illinois's procedural rules by first exhausting their remedies with the Cook County Board of Review and then bringing a suit in the Circuit Court of Cook County. There they challenged the assessment under the Fourteenth Amendment's Equal Protection Clause, relying on the rule articulated in *Allegheny Pittsburgh Coal Co. v. County Commission*: a property owner whose tax assessment comports with state law may nevertheless suffer a violation of the Equal Protection Clause if similarly situated property is assessed at a lower rate than

his. 488 U.S. 336, 345–46 (1989). The taxpayers also alleged that the assessment violated Illinois statutory law and the Illinois Constitution.

But the taxpayers have struggled to present the evidence that they need to make their case; over a decade later, their state suit remains in discovery. They attribute the delay to a provision of Illinois law, 35 ILCS 200/23-15, which they say constrains them in several ways: it limits whom they can name as a defendant, what evidence they can present, and what arguments they can raise when challenging property taxes. According to the taxpayers, section 23-15 has the effect of preventing them from making their equal protection case in state court altogether.

Seeking a forum for their federal constitutional claims, the taxpayers then sued Cook County, the County Assessor, and the County Treasurer (who serves ex officio as the County's tax collector) in federal district court, once again alleging a violation of the Equal Protection Clause. They also challenged the Illinois tax-objection procedures under the guarantees to due process in the United States Constitution and the Illinois Constitution. Finally, they alleged additional violations of the substantive guarantees of equal taxation in the Illinois Constitution and the Illinois Property Tax Code. The taxpayers sought declaratory relief and an injunction that the tax collector refund their overpaid taxes.

The district court held that the Tax Injunction Act barred the taxpayers' federal suit. The Act provides that federal district courts may not "enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341; *see also Hager v. City of West*

*Peoria*, 84 F.3d 865, 868 n.1 (7th Cir. 1996) (explaining that the Act also applies to local and municipal taxes). Rejecting the taxpayers' argument that section 23-15 denied them an adequate state forum, the district court held that Illinois courts provide a "plain, speedy and efficient remedy." The court dismissed the suit for lack of subject-matter jurisdiction under the Act and, in the alternative, declined to exercise jurisdiction under the principle of comity. The taxpayers now appeal, arguing that Illinois does not offer an adequate remedy for their constitutional claims.

## II.

## A.

The taxpayers maintain that several features of section 23-15 make Illinois courts inhospitable to their claims, but they focus on one in particular. Paragraph (b)(3) of the statute provides that relief is available for assessments that are "incorrect or illegal." It goes on to say: "If an objection is made claiming incorrect valuation, the court shall consider the objection without regard to the correctness of any practice, procedure, or method of valuation followed by the assessor …." 35 ILCS 200/23-15(b)(3). The taxpayers characterize this as the "Methodology Prohibition."

The taxpayers argue that the Methodology Prohibition is incompatible with their constitutional claim. Procedures that allow them to challenge only the correctness of their assessment without regard to the Assessor's methods or intent are of no use to these taxpayers. Their argument, after all, is not that their taxes were valued incorrectly under the letter of Cook County law. Rather, they contend that they suffered an equal protection violation because the letter of the law was

not applied to everyone else. To prove that claim, they need to conduct discovery about the Assessor's methods and his intent. Not only that, but the taxpayers want to name the Assessor as a defendant, since his actions are the focus of their claims. But the statute only contemplates the collector as a defendant, *see id.* 200/23-15(a), so they could not sue the Assessor in state court or file interrogatories for him to answer, and he has been free to destroy evidence of unconstitutional action with impunity. In support of their argument, they cite a non-precedential decision from the Illinois Appellate Court that held that constitutional objections "cannot be raised" in tax objection proceedings because of these restrictions. *See Friedman v. Pappas*, No. 1-2-2685, at *13–14 (Ill. App. Ct. 2004) (Separate App. Pls.-Appellants 194–95). According to the taxpayers, section 23-15 deprives them of any "remedy" at all in state court—let alone one that is "plain, speedy and efficient" under the Tax Injunction Act.

### B.

In most cases, a "plain, speedy and efficient" state-court remedy is easy to identify. For the Act's jurisdictional bar to apply, a state need only "provid[e] the taxpayer with a 'full hearing and judicial determination' at which she may raise any and all constitutional objections to the tax.… The Act contemplates nothing more." *Rosewell v. LaSalle Nat'l Bank*, 450 U.S. 503, 515–16 n.19 (1981) (citation omitted). We construe the Tax Injunction Act's limitations restrictively because the Act is meant to dramatically curtail federal-court review of state and local taxation. *See California v. Grace Brethren Church*, 457 U.S. 393, 413 (1982).

Several cases have applied *Rosewell*'s standard to Illinois's procedures. In *Rosewell* itself, the Supreme Court held that

certain Illinois procedures for challenging property taxes sat-
isfied the Act's "minimal procedural criteria." 450 U.S. at 512
(emphasis omitted). At the time, an aggrieved taxpayer in Il-
linois first had to pay the challenged property tax and then
seek a refund, which could take as long as two years to secure.
The Court held that the Illinois remedy nevertheless qualified
as "plain, speedy and efficient." *Id.* at 528. The Court empha-
sized that the taxpayer was free to raise her federal equal pro-
tection and due process claims before the Cook County circuit
court under Illinois's procedures. The Illinois courts' remedy
therefore was sufficient for the Act's jurisdictional bar to ap-
ply.

Fourteen years after *Rosewell*, the Illinois legislature en-
acted the 1995 Amendments to the Illinois Property Tax Code,
which revised the procedures for tax objections. The Supreme
Court has not revisited Illinois's procedures since the Amend-
ments, but our court has had several occasions to do so. None
of those cases, however, dealt with an underlying constitu-
tional challenge like this one or an argument about section 23-
15—as a brief overview of our precedents makes clear.

Our first major treatment of Illinois's procedures for chal-
lenging taxes after the 1995 Amendments was *Levy v. Pappas*,
510 F.3d 755 (7th Cir. 2007). (An earlier post-Amendments
case, *Wright v. Pappas*, 256 F.3d 635 (7th Cir. 2001), held only
that the Tax Injunction Act applies to the tax collection prac-
tice known as a lien sale.) In *Levy*, we drew a distinction be-
tween a plaintiff who alleges that she was singled out for un-
fair tax treatment and one who alleges that others were sin-
gled out for unfair benefits. 510 F.3d at 762. That distinction is
no longer viable, since the Supreme Court abrogated *Levy* in

*Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 420–21, 432 (2010). *Levy* did not address section 23-15.

In *Scott Air Force Base Properties, LLC v. County of St. Clair*, we considered for the first time after the 1995 Amendments whether the Tax Injunction Act bars an Illinois taxpayer's federal challenge to its tax assessment. 548 F.3d 516, 519 (7th Cir. 2008). The taxpayer in that case believed that it was exempt from certain property taxes. It had argued that Illinois courts could not provide an "efficient" remedy for purposes of the Act because Illinois law required the taxpayer to pursue its exemption challenge at the same time as it challenged its tax valuation. *Id.* at 521. We held that the bifurcated procedure was not so inefficient as to lift the Tax Injunction Act's bar. *Id.* at 522. The taxpayers in *Scott Air Force Base* had not attempted to use the procedures outlined in section 23-15, so we did not address whether those procedures operated to prevent taxpayers from raising particular constitutional claims.

We later addressed a different procedure for challenging Illinois property taxes in *Capra v. Cook County Board of Review*, 733 F.3d 705 (7th Cir. 2013).[1] Under 35 ILCS 200/16-160, taxpayers can appeal a decision from the county Board of Review to the Property Tax Appeal Board, instead of directly to the circuit court as the taxpayers did here. In *Capra*, the taxpayers argued that they would not be able to present their claims to the Appeal Board or the Cook County circuit courts under

---

[1] We decided *Capra* and the other post–*Scott Air Force Base* cases under the principle of comity rather than the Tax Injunction Act. As we explain in greater depth below, the standards for analyzing the adequacy of a state forum for purposes of comity and the Tax Injunction Act are identical. *Capra*, 733 F.3d at 713. For that reason, our comity precedents are as relevant as *Scott Air Force Base*.

those procedures because the adjudicators in those bodies were too corrupt to be able to neutrally review charged issues. *Id.* at 715. We rejected the allegations of corruption and affirmed the district court's dismissal of the suit. The plaintiffs in *Capra* mentioned in their briefs the burden of proof set forth in section 23-15, but they did not mention the Methodology Prohibition or argue that it blocked their constitutional claims.

We have rejected various challenges to other aspects of Illinois's procedures as well. In *Heyde v. Pittenger*, 633 F.3d 512, 521 (7th Cir. 2011), we rejected the argument that two-year delays in a taxpayer's Appeal Board proceedings made them insufficiently "speedy." In *Cosgriff v. County of Winnebago*, 876 F.3d 912, 916 (7th Cir. 2017), we dismissed an attempt to reframe a request for a tax refund as a request for a constitutional forum. And in *Perry v. Coles County*, 906 F.3d 583, 589–90 (7th Cir. 2018), we rejected an argument based on the unavailability of injunctive relief to remedy procedural errors in the taxing process. Only in *Perry* did the taxpayers argue that an aspect of section 23-15—there, the provision's bar on class actions—operated to prevent them from raising constitutional claims in state court. *Id.* at 590 n.6. But we rejected that contention without consideration because the taxpayers had raised the argument for the first time in their reply brief. *Id.* No other taxpayer has argued that section 23-15 operates to restrict federal constitutional claims.

In some of these cases, we used general language to uphold the adequacy of the challenged Illinois procedures. For example, in *Scott Air Force Base*, we painted with a broad brush when we said that "Illinois taxpayers are able to litigate their constitutional … challenges to state tax matters in the

Illinois administrative and judicial system." 548 F.3d at 523. And in *Capra*, we wrote that "any statutory or constitutional claims" could be raised through either the Appeal Board or the Illinois county circuit courts. 733 F.3d at 715. But we had no occasion in those cases to address whether section 23-15 restricts taxpayers' constitutional claims. Our precedents therefore do not resolve the issue in this case. We consider now for the first time whether section 23-15 prevents taxpayers from raising federal constitutional challenges to their property taxes in Illinois courts.

C.

To avoid the Tax Injunction Act's jurisdictional bar, the taxpayers must demonstrate that section 23-15 denies them a complete hearing on any and all constitutional objections. *Rosewell*, 450 U.S. at 514. Their particular constitutional objection is that the Assessor violated the Equal Protection Clause by valuing their properties correctly under the Cook County ordinance but cutting everyone else a break with a lower de facto rate. *See Allegheny Pittsburgh Coal Co.*, 488 U.S. at 345–46. If section 23-15 limits taxpayers to challenging only the correctness of the valuation under Illinois law, then they have no state forum for that cognizable constitutional claim. What's more, a taxpayer attempting to prove an *Allegheny Pittsburgh Coal* claim under the Equal Protection Clause must demonstrate that there is no rational basis for the disparate tax treatment—a burden that generally requires engaging with the legitimacy of the policy's stated purpose. *See Nordlinger v. Hahn*, 505 U.S. 1, 15–16 (1992). If section 23-15 prevents taxpayers from probing into the Assessor's methodology or intent, they will not be able to prove that his tax assessment violated the Equal Protection Clause.

Surprisingly, the defendants do not dispute the taxpayers' account of section 23-15 and its operation. Instead, they argue that those procedures nevertheless satisfy the Tax Injunction Act. The defendants contend that when Illinois dispensed with requiring proof of the Assessor's methodology or intent, it made the objection process only more "plain, speedy and efficient." That may be true for many claimants. But the defendants ignore the most crucial procedural criterion under *Rosewell*: the availability of a state-court forum to hear "any and all constitutional objections to the tax." 450 U.S. at 514. Efficiency is no good to the taxpayers if it means that they cannot bring their equal protection claim in state court.

And the defendants agree with the taxpayers that they cannot. In their brief, the defendants assert that the taxpayers err in presuming that they can raise their constitutional claims, sharply admonishing that "[t]hey are not free to do so." Instead, the defendants argue, "the only matter at issue in a Section 23-15 action is whether the assessment of the real estate property was correct." By the defendants' own admission, then, the section 23-15 procedures provide no forum for the taxpayers to raise their constitutional claims. Nor have the defendants been able to point to any alternative channels in which these taxpayers can raise their federal constitutional claims in Illinois courts.[2] These concessions make a

---

[2] An Illinois taxpayer appealing a decision from the county Board of Review can either do so directly in circuit court under the procedures outlined in section 23-15, or first through the Property Tax Appeal Board under the procedures outlined in 35 ILCS 200/16-160. *See Capra*, 733 F.3d at 714–15. At oral argument, counsel for the defendants was asked whether the taxpayers would have had a forum for their constitutional claims if they had chosen to pursue relief first at the Property Tax Appeal Board under section 16-160 instead of in court under section 23-15. The

potentially complex issue a great deal simpler. Since the defendants agree that the taxpayers cannot make their equal protection case in state court, the taxpayers have no "remedy" at all for their claims—never mind a "plain, speedy and efficient" one—and the Tax Injunction Act does not bar their federal suit.

### III.

The district court also abstained from exercising jurisdiction over the case under the principle of comity. Comity is a doctrine of abstention, rather than a jurisdictional bar, but in the state-taxation context it operates similarly to the Tax Injunction Act. *See Capra*, 733 F.3d at 713–14. The Act restricts federal jurisdiction over state-taxation suits for equitable or declaratory relief. 28 U.S.C. § 1341; *see also Grace Brethren Church*, 457 U.S. at 407–11 (holding that the Act applies to declaratory relief in addition to injunctions). In *Fair Assessment in Real Estate Ass'n v. McNary*, the Supreme Court held that federal courts are barred from reviewing state-taxation suits for damages as well, albeit by the principle of comity rather than the Act. 454 U.S. 100, 116 (1981). Comity requires taxpayers seeking damages to pursue relief in the state courts, assuming that state-court remedies are "plain, adequate, and complete." *Id.*

---

defendants' counsel conceded that the Appeal Board has taken the position that it cannot consider the type of evidence that would prove that the Assessor did not apply uniform rates. *See* Letter to Appellant, No. 06-31627 (Ill. Property Tax App. Board Aug. 29, 2012) (Separate App. 200). Counsel speculated that Illinois courts might take a different view but admitted, "We don't know … whether a constitutional claim can be made" at the Appeal Board (Oral Argument at 23:31–23:40). Such an unclear path to relief is not a sufficiently "plain" remedy under the Tax Injunction Act.

The taxpayers have pursued only injunctive and declaratory relief in this case. But even assuming that *Fair Assessment* bears on this case, comity does not bar federal jurisdiction here. The Court has explained that the "plain, adequate, and complete" requirement in the comity analysis is identical to the "plain, speedy and efficient" requirement under the Tax Injunction Act. *Id.* at 116 n.8. Since the Act does not bar the federal district court from exercising jurisdiction over this challenge, neither does the principle of comity.

\* \* \*

The district court's dismissal for lack of subject matter jurisdiction is REVERSED and the case is REMANDED.