In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-1388

RAYMOND R.S. HEYDE,

*Plaintiff-Appellant,*

*v.*

GARY PITTENGER, et al,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 1:07-cv-01182—**Michael M. Mihm**, *Judge.*

ARGUED SEPTEMBER 16, 2010—DECIDED JANUARY 11, 2011

Before CUDAHY, ROVNER, and EVANS, *Circuit Judges*.

EVANS, *Circuit Judge.* Raymond Heyde, the trustee of an entity called the Raymond R.S. Heyde Revocable Trust, holds title to residential property located in Tazewell County, Illinois. Heyde brought suit against five members of the Tazewell County Board of Review ("BOR"): Gary Pittenger, Lloyd Orrick, Joe Varda, Rob Paulin and Robert Kieser; as well as Kristal Deininger, acting Supervisor of Assessments, Jim Unsicker,

temporary acting Supervisor of Assessments, and Richard Brehmer, Deer Creek Township Assessor ("the Assessors"). Heyde asserts that by setting his property's assessment at levels grossly disproportionate to its fair market value, the BOR and the Assessors deprived him of his equal protection rights, conspired to violate his equal protection rights, and retaliated against him for previously exercising his right to challenge assessments—all in violation of 42 U.S.C. § 1983. He sought, among other things, damages against the defendants.

The district judge granted the BOR's Rule 12(b)(6) motion, finding they had absolute immunity. The judge later dismissed the case without prejudice against the remaining Assessors. Citing principles of comity, he found that the case was premature because Heyde had not exhausted his available state remedies. The judge also denied Heyde's motion for reconsideration. Heyde now appeals.

Some might think that Tazewell County, Illinois, is an unlikely spot for a nasty dispute like the one in this case. The county, which is just south of Peoria, describes itself on its website as a "central Illinois community which combines city assets with the serene beauty and quiet countryside of rural living." But looks can be deceiving as Mr. Heyde's decision to go to war in federal court with eight of his fellow county residents is anything but serene and quiet.

In Tazewell County, the Township Assessor makes the initial assessment value of each property. According to Illinois law, the assessor shall assess "the property at

33⅓% of its fair cash value." 35 ILCS 200/9-155. If a resident is dissatisfied with an assessment, he is entitled to file a complaint with the BOR. "[T]he board of review upon application of any taxpayer or upon its own motion may revise the entire assessment of any taxpayer or any part of the assessment as appears to it to be just." 35 ILCS 200/16-30. The BOR may not increase the assessment without giving the taxpayer notice and an opportunity to be heard. 35 ILCS 200/16-25, -30, -55. The BOR has the power to "summon any assessor, deputy, or other person to appear before it to be examined under oath concerning the method by which any evaluation has been ascertained." 35 ILCS 200/16-10.

If, after the BOR has rendered its decision, the property owner remains dissatisfied, he may appeal the decision to the Illinois Property Tax Appeal Board ("PTAB"). 35 ILCS 200/16-160. A hearing before the PTAB "shall be granted if any party to the appeal so requests." 35 ILCS 200/16-170. The PTAB may request the production of any material documents and issue subpoenas. *Id,* 35 ILCS 200/16-175. All PTAB decisions are subject to review by the state circuit courts, pursuant to Administrative Review Law and may be further appealed through the state court system. 35 ILCS 200/16-195.

In the fall of 2003, Heyde received his 2004 notice of assessment. The BOR assessed his property at $207,270. Heyde filed a complaint with the BOR, challenging the assessment as exceeding 33⅓% of the property's fair market value. The BOR granted relief and decreased the assessment to $140,000.

In August 2004, Heyde received a notice which increased the assessment for 2005 to $149,850. Heyde again filed a complaint with the BOR. This time, the BOR declined to reduce the assessment.[1]

In January 2005, Heyde hired an independent appraiser, who appraised his property at a fair market value of $435,000, which would result in an assessment of $145,000. In September 2005, Heyde received his 2006 notice of assessment. This time the assessment was set at $153,776. Yet again, Heyde filed a challenge with the BOR, submitting the independent appraiser's estimate as well as measurements of the house. In its June 1, 2006 decision, however, the BOR declined to reduce the assessment. Instead, the assessment was increased, very significantly, to $436,276. The huge jump in assessed value was apparently based on the belief that the house was much bigger than it was originally thought to be. The house on the property, which sits behind a locked gate and cannot be seen from any public way, was thought to include over 10,000 square feet of living space.

Following the BOR's June 1 decision, Richard Brehmer, the Tazewell County Assessor, reported the property's assessment at $458,860. Jim Unsicker, the acting Super-

---

[1] The actual tax rates do not appear to be in the record. But assuming, for example, that they were something in the area of 6% of the assessed value, the increase in Heyde's tax bill for 2005 over 2004 would have been rather modest: a jump to $8,991 from $8,400.

visor of Assessment for the county, mailed the 2007 notice of assessment to Heyde. In May 2007, Heyde again filed a complaint with the BOR. But the BOR affirmed the $458,860 assessment.

For the subsequent tax years until 2009, the BOR refused to lower the assessment on Heyde's property. Heyde continued to file complaints with the BOR. The roadblock to resolving the dispute seems to be that Heyde, for several years, declined to allow anyone from the county onto his property to do an inspection. The BOR continued to affirm the assessment.

On July 5, 2006, before filing this action with the district court, Heyde appealed the BOR's June 1, 2006 decision to the PTAB. A PTAB hearing officer heard the case on May 4, 2009. By this time, Heyde had allowed the BOR onto his property and both Heyde and the BOR stipulated that the residence contained 4,021 square feet of living area.

On November 25, 2009, the PTAB ordered a reduction in the assessment of Heyde's property for the 2005 tax year. The PTAB, however, did not reduce the assessment to Heyde's liking, and on December 30, 2009, he filed a complaint with the Tenth Judicial Circuit Court for Tazewell County, Illinois, seeking administrative review of the PTAB decision pursuant to 735 ILCS 5/3-101 *et. seq.* Heyde currently has additional appeals pending before the PTAB for other tax years up to 2009. Apparently, none have been scheduled for a hearing.

In July 2007, Heyde filed a complaint in federal court against BOR Chairman Pittenger and former BOR

members Orrick and Varda. On December 14, 2007, he amended his complaint to include current BOR members Paulin and Kieser, as well as Tazewell County Assessors Deininger, Unsicker, and Brehmer. He sought "in excess of $400,000 plus punitive damages."

The district judge granted the BOR members' Rule 12(b)(6) motion, finding that they were entitled to absolute immunity. The remaining defendants (the Assessors) later filed a motion for summary judgment arguing that Heyde's case was premature because he has appeals pending before the PTAB and thus he has not exhausted his state remedies. In the alternative, they argued that they were protected by qualified immunity. The district judge found Heyde's claims to be premature under principles of comity. The judge accordingly dismissed Heyde's case without prejudice and did not reach the question of qualified immunity. The judge also denied Heyde's motion for reconsideration.

As a preliminary matter, the BOR and the Assessors argue that we do not have jurisdiction to hear this appeal because the district judge dismissed the case without prejudice. The Assessors argue that because Heyde can return to federal court after he has exhausted his state remedies the district judge's ruling was not a final order.

In *Taylor-Holmes v. Office of the Cook County Public Guardian*, however, we noted that "[a] dismissal without prejudice is an appealable final order if it ends the suit so far as the district court is concerned." 503 F.3d 607, 610 (7th Cir. 2007). Heyde correctly points out that the

district judge's order effectively ends this suit because after Heyde has exhausted his state remedies the only federal court that can review the state court judgment is the Supreme Court. *See Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 116 (1981). Therefore, the district judge's order effectively ended the suit so far as the federal district court was concerned. Accordingly, we have jurisdiction to hear this appeal.

Next, we review the district judge's grant of the BOR's Rule 12(b)(6) motion to dismiss finding that the BOR is entitled to absolute immunity. Orders granting motions to dismiss are reviewed *de novo*. *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009). "In assessing whether the plaintiff has stated a valid claim for relief, we construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor." *Golden v. Helen Sigman & Associates, Ltd.*, 611 F.3d 356, 360 (7th Cir. 2010) (internal quotations omitted). To state a claim under 42 U.S.C. § 1983, "[a] plaintiff[] must allege that a government official, acting under color of state law, deprived [him] of a right secured by the Constitution or laws of the United States." *Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007). Dismissal is proper "if the complaint fails to set forth 'enough facts to state a claim to relief that is plausible on its face.'" *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570).

Here, the members of the BOR argue, and the district judge agreed, that Heyde's § 1983 claims should be dis-

missed because they are entitled to absolute immunity. Our approach to determining whether an official is entitled to absolute immunity is well established; we apply a functional approach. *Buckly v. Fitzsimmons*, 509 U.S. 259, 269 (1993). "That is, we look to the nature of the function performed, not the identity of the actor who performed it. . . . Absolute immunity is not limited to government officials with the title of prosecutor or judge." *Wilson v. Kelkhoff*, 86 F.3d 1438, 1443 (7th Cir. 1996) (internal citation omitted). Absolute immunity protects members of quasi-judicial adjudicatory bodies when their duties are functionally equivalent to those of a judge or prosecutor. *Butz v. Economou*, 438 U.S. 478, 512-13 (1978). "[T]he nature of the adjudicative function requires a judge frequently to disappoint some of the most intense and ungovernable desires that people can have." *Forrester v. White*, 484 U.S. 219, 226 (1988). Therefore, we have found that,

> [T]he cloak of immunity is designed to prevent a situation in which decision-makers "act with an excess of caution or otherwise . . . skew their decisions in ways that result in less than full fidelity to the objective and independent criteria that ought to guide their conduct," out of a fear of litigation or personal monetary liability.

*Tobin for Governor v. Illinois State Board of Elections*, 268 F.3d 517, 522 (7th Cir. 2001) (quoting *Forrester*, 484 U.S. at 223).

Moreover, in *Butz*, the Supreme Court identified several characteristics of quasi-judicial functions that

courts should consider when determining whether a public official is entitled to absolute immunity: (1) the need to assure that the individual can perform his functions without harassment or intimidation; (2) the presence of safeguards that reduce the need for damages actions as a means for controlling unconstitutional conduct; (3) the insulation from political influence; (4) the importance of precedent; (5) the adversarial nature of the process; and (6) the correctability of error on appeal. 438 U.S. at 512.

Absolute immunity, however, applies only to judicial acts and does not protect the official from acts that are ministerial or administrative in nature. *Dawson v. Newman*, 419 F.3d 656, 661 (7th Cir. 2005). Moreover, "the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed*, 500 U.S. 478, 486 (1991). Here, the district judge found that the BOR members are entitled to absolute immunity because, under the *Butz* criteria and Illinois statutes governing the BOR, their actions while reviewing Heyde's property assessment claim were quasi-judicial in nature. We agree.

Heyde argues that when the BOR relied on evidence it gathered, and did not confine its process to materials submitted by the parties (and thus increased his property assessment on its own accord), it was acting in an investigatory capacity, and therefore the members should not be granted absolute immunity. In support of his argument, Heyde cites several Supreme Court cases in which an officer was denied absolute immunity

because he was acting in an investigative capacity at the time in question. *See Hartman v. Moore*, 547 U.S. 250, 262 n.8 (2006) (no absolute immunity for a prosecutor for conduct taken in an investigatory capacity); *Buckley*, 509 U.S. at 271-75 (no absolute immunity for a prosecutor acting in an administrative capacity); *Burns*, 500 U.S. at 492-96 (no absolute immunity when a prosecutor offers legal advice to the police regarding interrogation practices). These cases, however, are easily distinguishable. The BOR was not acting in an investigatory capacity. Rather, the actions of the BOR here were quasi-judicial in nature and in accordance with Illinois law.

Under Illinois law, the BOR has the authority to: (1) resolve complaints challenging property tax assessments set by county officials; and (2) on its own motion revise the entire assessment of any taxpayer or any part of the assessment as appears to be just. *See* 35 ILCS 200/16-25, -30. The BOR is the fact-finder and decision-maker for disputed property assessments in its county. Therefore, Heyde's argument that the BOR was acting in an investigatory capacity fails. Illinois statutes are clear—the BOR is within its bounds as a judicial body to revise Heyde's property assessment. How it assembled the evidence upon which it relied does not change the nature (quasi-judicial) of the action it takes.

In addition to the Illinois statutes, our conclusion that the BOR members are entitled to absolute immunity is supported by our previous decisions. In *Reed v. Village of Shorewood*, we found that "the commissioner is acting

in a judicial capacity when he revokes a liquor license. He may not revoke without finding that the licensee has violated the law; he may make that finding only after notice and hearing; and he 'shall reduce all evidence to writing and shall maintain an official record of the proceedings.'" 704 F.2d 943, 951 (7th Cir. 1983) (internal citations omitted). As the district judge noted here, although the BOR can quite properly increase assessments on its own, like in *Reed*, it can do so only if it provides notice and hearing. 35 ILCS 200/16-30. Indeed, the BOR engaged in a judicial proceeding, giving Heyde the opportunity to present evidence before it increased his assessment.

In *Crenshaw v. Baynerd*, we affirmed a finding of absolute immunity granted to the Indiana Civil Rights Commission, determining that the Commission's decision that it lacked jurisdiction to investigate an allegation of discrimination was an action taken in an adjudicatory capacity. 180 F.3d 866, 868 (7th Cir. 1999). We have also found that members of a prison review board that held a hearing to evaluate whether revocation of a plaintiff's supervised release was proper before revoking the release were entitled to absolute immunity. *Wilson*, 86 F.3d at 1443-45. And we have affirmed a grant of summary judgment to members of the Illinois Board of Elections concluding that they were entitled to absolute immunity when ruling on objections to nominations for state offices. *Tobin for Governor*, 268 F.3d at 522. We have also observed that administering oaths, examining witnesses, and the power to issue subpoenas are hallmarks of the sort of duties that entitle government

or administrative actors to the protection afforded by the doctrine of absolute immunity. *Id*.

Here, the BOR had similar duties. It was empowered to "summon any assessor, deputy, or any other person to appear before it to be examined under oath concerning the method by which any evaluation has been ascertained." 35 ILCS 200/16-10. More importantly, the BOR can only increase an assessment if it gives the property owner notice and an opportunity to be heard. 35 ILCS 200/16-25, -30, -55.

Additionally, in *Tobin for Governor*, we found that, in accordance with the *Butz* factors, absolute immunity was necessary to "protect the board members from harassment and intimidation so that they can exercise their independent judgment." 268 F.3d at 522. Likewise, the BOR statutory function of affirming, denying, and revising property assessments is inherently controversial and likely to result in disappointed parties and, unless checked, a multitude of lawsuits.

Finally, in *Reed* we found that the ability of the individual to appeal the decision of the administrative official weighs toward granting absolute immunity. 704 F.2d at 951. "The basis of the absolute immunity of judges is less that they are unlikely to commit wrongs than that their wrongs are largely remediable through the appellate process." *Id*. at 952. This justification applies equally to actions taken by the BOR.

Illinois law provides safeguards to review (and correct, if necessary) BOR decisions on appeal. 35 ILCS 200/16-160. The statute guarantees an appeal as of right

with the PTAB. And the PTAB reviews BOR decisions *de novo*. 35 ILCS 200/16-180. *See Tobin for Governor*, 268 F.3d at 522 (finding it important to the determination of whether the official was entitled to absolute immunity that Illinois statute afforded judicial review against board decisions). Moreover, PTAB decisions are appealable to the Illinois courts pursuant to Illinois Administrative Review Law. 35 ILCS 200/16-195; *see also Beverly Bank v. Board of Review of Will County*, 117 Ill. App. 3d 656, 662 (1983).

Therefore, we agree with the district court. Heyde's argument that the BOR members were acting in an investigatory capacity, and thus are not entitled to absolute immunity, is unpersuasive. The BOR has the characteristics that counsel towards granting absolute immunity. The BOR members' actions while performing their duties as instructed by Illinois statutes, Heyde's ability to present evidence and question witnesses, his ability to appeal both to the PTAB and, if still dissatisfied, to the Illinois courts, and the need to protect BOR members from fear of intimidation and litigation, fall squarely within the *Butz* factors and within our previous decisions regarding absolute immunity for state and local administrative officials. Accordingly, the BOR members are entitled to absolute immunity.

We turn then to the district judge's grant of the Assessors' summary judgment motion. Our review is *de novo.* The district judge granted the Assessors' motion finding that Heyde's claims are premature and barred by principles of comity.

In *McNary*, the plaintiff, a non-profit corporation called Fair Assessment in Real Estate, sued the Missouri State Tax Commission alleging that the organization's members were deprived of equal protection and due process by the Commission's unequal taxation of real property. 454 U.S. at 105-06. The Court, citing the decision in the district court, found that,

> To allow such suits would cause disruption of the states' revenue collection systems equal to that caused by anticipatory relief. State tax collection officials could be summoned into federal court to defend their assessments against claims for refunds as well as prayers for punitive damages, merely on the assertion that the tax collected was willfully and maliciously discriminatory against a certain type of property. Allowance of such claims would result in this Court being a source of appellate review of all state property tax classifications.

*Id*. at 114 (citing *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 478 F. Supp. 1231, 1233-34 (E.D. Mo. 1979)). Accordingly, the Supreme Court held that "taxpayers are barred by the principle of comity from asserting § 1983 actions against the validity of state tax systems." *McNary*, 454 U.S. at 116. Taxpayers must first exhaust the state remedies, and only after may they seek review of the state court decision in the United States Supreme Court. *Id*.

Heyde argues that his case is distinguishable from *McNary* because the process in Illinois is not a "plain,

speedy and efficient"[2] remedy as *McNary* requires. *Id*. To make this argument, Heyde relies heavily on *Rosewell v. LaSalle National Bank*, 450 U.S. 503 (1981), a case decided some eight months before *McNary*. There, the Supreme Court found that the two year delay in the Illinois property tax refund process, though regrettable, was not "outside the boundary of a 'speedy' remedy." *Id*. at 520-21. Heyde argues that the delay in his case, which is greater than two years, means that the state process is no longer "plain, speedy and efficient." Thus, he argues he is entitled to pursue federal remedies at this time.

But Heyde fails to recognize that since *Rosewell* and *McNary*, we have continually found that the available state procedures for challenging the Illinois tax system are acceptable under *McNary*. *See Scott Air Force Base Properties, LLC v. County of St. Clair, Illinois*, 548 F.3d 516, 522-23 (7th Cir. 2008) (finding that a full hearing and judicial determination of any constitutional claims under the system created by the Property Tax Code was sufficient); *Levy v. Pappas*, 510 F.3d 755, 762 (7th Cir. 2007) (finding that a plaintiff cannot bring a federal action when the plaintiff's claim is that the state tax system is singling her out); *Fromm v. Rosewell*, 771 F.2d 1089, 1092 (7th Cir. 1985) (finding that the state property tax appeal was adequate and that principles of comity precluded federal review).

---

[2] The Court noted that there is no difference between "plain, adequate and complete" and "plain, speedy and efficient." ary454 U.S. at 116 n.8.

In *Scott Air Force Base*, we found that "Illinois taxpayers are able to litigate their constitutional and other federal-law challenges to state tax matters in the Illinois administrative and judicial system." 548 F.3d at 523. And in *Levy*, we held that principles of comity bar federal action "[w]hen a plaintiff alleges that the state tax collection or refund process is singling her out for unjust treatment." 510 F.3d at 762.[3] There, the plaintiff filed a § 1983 action against county officials arguing that the officials retained taxpayers' property tax refunds and retaliated against the plaintiff for filing a state court action. We held that *McNary* controlled, and the plaintiff's § 1983 claims were barred under principles of comity. *Id*.

Heyde also cites *Colonial Pipeline Co. v. Collins* to support his argument. 921 F.2d 1237 (11th Cir. 1991). In *Colonial Pipeline*, the Eleventh Circuit found that a district court erred in concluding it lacked jurisdiction to hear a challenge to Georgia's ad valorem tax system before the court conducted a "full factual inquiry into the truthfulness of [the plaintiff's] allegations concerning the adequacy of state remedies for its constitutional claims." *Id*. at 1244. What Heyde leaves out, however, is the reason the court disagreed with the district judge in that case: recent amendments to the tax

---

[3] We also held that the Tax Injunction Act and comity do not bar federal action if "a plaintiff alleges that the state tax collection or refund process is giving benefits to someone else." *Levy*, 510 F.3d at 762. The Supreme Court abrogated our decision on the second holding. *Levin v. Commerce Energy, Inc.*, 130 S.Ct. 2323, 2330 (2010).

system "ha[d] so significantly altered the assessment and appeals processes . . . that their adequacy within the meaning of [plain, speedy and efficient] remains an open question." *Id*. That is not the case here. We have continuously held that the Illinois tax system passes muster under *McNary*.

Therefore, while the delays in the Illinois system are unfortunate, this case fits within the parameters of *McNary* and our previous decisions. The Illinois system, though far from perfect, is "plain, speedy and efficient" as understood in *McNary*. The district judge correctly granted the Assessors' motion for summary judgment. Pursuant to principles of comity, Heyde must exhaust his available state remedies.

The Assessors also argue that they are entitled to qualified immunity. But because we believe the case was correctly dismissed without prejudice under principles of comity, we do not reach this issue.

As we approach the end of our consideration of this case, we note a fallback argument advanced by Mr. Heyde. He says if we affirm the district judge's grant of summary judgment to the Assessors on comity grounds, we should vacate the order granting the Rule 12(b)(6) motion to dismiss filed by the BOR members based on absolute immunity. Affirming the grant of summary judgment, Heyde maintains, means the district court should have also dismissed the case without prejudice against the BOR members based on comity. The judge should not, the argument goes, have decided the question of immunity.

We disagree with Heyde's alternative argument. When the BOR members moved to dismiss, the issue of comity, which is an affirmative defense, was not raised. As the case stood at that time, the district judge had jurisdiction to decide the issue that was raised: Are the members of the BOR entitled to a ticket out of the case because they enjoy absolute immunity from the type of claim being asserted against them? Once that question was answered in favor of the BOR members, it became the law of the case. The later introduction into the case of the issue of comity by the Assessors in their motion for summary judgment did not require a trip back in time to when the Rule 12 motion was decided.

Finally, we turn to the district judge's denial of Heyde's Rule 59(e) Motion for Reconsideration. We review this decision for abuse of discretion. *Andrews v. E.I. DuPont de Nemours and Co.*, 447 F.3d 510, 515 (7th Cir. 2006). Rule 59(e) allows a court to amend a judgment "only if the petitioner can demonstrate a manifest error of law or present newly discovered evidence." *Obriecht v. Raemisch*, 517 F.3d 489, 494 (7th Cir. 2008). Here, Heyde has not produced any evidence that the district judge's grant of absolute immunity to the BOR members was a manifest error of law or fact. And as we discussed, the district judge correctly granted the BOR's Rule 12(b)(6) motion. Therefore, there is no evidence that the district court abused its discretion when it denied Heyde's motion for reconsideration.

In sum, the actions of the BOR members are quasi-judicial in nature and they are accordingly entitled to

absolute immunity. Moreover, under *McNary* and under our precedent, the district judge properly dismissed without prejudice Heyde's claims against the Assessors citing principles of comity. The judgment of the district court is AFFIRMED.