NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted January 20, 2012[*]
Decided January 20, 2012

**Before**

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 11-1872

| | |
|---|---|
| DAVID SHERROD, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Northern District of Illinois, |
| | Eastern Division. |
| *v.* | |
| | No. 11 C 1408 |
| PETER J. BIRNBAUM, et al., | |
| *Defendants-Appellees.* | Blanche M. Manning, |
| | *Judge.* |

**O R D E R**

David Sherrod appeals from the district court's dismissal of his civil-rights lawsuit against six judges of the Illinois Court of Claims, who, he contends, violated his due-process rights when they dismissed his action against the State of Illinois. Because we agree with the

---

[*] The appellees were not served with process in the district court and are not participating in this appeal. After examining the appellant's brief and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the appellant's brief and the record. *See* FED. R. APP. P. 34(a)(2)(C).

district court that the judges are entitled to absolute judicial immunity, we affirm the judgment.

The lead-up to this case began in 1995 when Sherrod received inadequate medical care while incarcerated at Big Muddy Correctional Center. After various doctors and nurses at Big Muddy failed to diagnose and treat his appendicitis properly, he sued them in federal court under 42 U.S.C. § 1983 and Illinois law for violating his Eighth Amendment rights and committing medical malpractice. Following a jury trial, Sherrod won a judgment of $400,000 against one of the doctors. Through his attorney he demanded payment on the judgment from the State of Illinois, which, he argued, had a duty under state law to indemnify the doctor because she was a state employee. The state rebuffed his request, maintaining that the doctor was not employed by Illinois; rather, the state replied, she worked for a private organization that contracted with the state to provide medical services at the prison.

Sherrod then sued the state in the Illinois Court of Claims, seeking a declaratory judgment that the state was required to pay the judgment against the doctor. The state responded that Sherrod first needed to exhaust other avenues of recovery, including pursuing the judgment-debtor herself, before suing the state. *See* 705 ILCS 505/25. The Court of Claims agreed with the state and dismissed the case.

Believing the Court of Claims' decision requiring exhaustion to be in error, Sherrod sued the judges of that court for compensatory and punitive damages in federal court. He alleges that the judges violated his federal due-process rights by deliberately disregarding state law in order to rule against him. Screening the complaint, *see* 28 U.S.C. § 1915(e)(2)(B), the district court concluded that Court of Claims judges are absolutely immune for "acts taken in their judicial capacities" and dismissed the action with prejudice for failure to state a claim.

On appeal Sherrod disputes the district court's resolution of the immunity issue. He argues that the procedures of the Court of Claims do not carry sufficient procedural safeguards to eliminate the need for damages actions under § 1983. Because we are reviewing a dismissal for failure to state a claim, we have recited the facts as Sherrod has stated them in his complaint. *Parish v. City of Elkhart*, 614 F.3d 677, 678 n.1 (7th Cir. 2010).

Before we can address the merits of this appeal, we must determine whether our jurisdiction is foreclosed by the *Rooker-Feldman* doctrine. *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). We raise this issue sua sponte because it determines our subject-matter jurisdiction. *Crawford v. Countrywide Home Loans, Inc.*, 647 F.3d 642, 646 (7th Cir. 2011); *Carter v. AMC, LLC*, 645 F.3d 840, 842 (7th Cir. 2011). The *Rooker-Feldman* doctrine bars state-court losers from filing suit in federal district court to complain of injuries caused by the judgment of a state court and to ask the federal

court to overturn that judgment. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600, 603 (7th Cir. 2008). The U.S. Supreme Court is the only federal court with the power to reverse or modify civil judgments of state courts; the lower federal courts lack appellate jurisdiction over state courts. *See* 28 U.S.C. §§ 1257(a), 1291, 1331; *Exxon Mobil Corp.*, 544 U.S. at 283–84; *Bergquist v. Mann Bracken, LLP*, 592 F.3d 816, 818 (7th Cir. 2010).

But *Rooker-Feldman* occupies a "narrow ground." *Exxon Mobil Corp.*, 544 U.S. at 284. Among other limitations, the doctrine applies only to the judgment of state *judicial* tribunals. *Verizon Md. v. Pub. Serv. Comm'n*, 535 U.S. 635, 644 n.3 (2002). It does not, for example, prohibit district-court review of adjudications rendered by state administrative agencies. *Id.*; *Gilbert v. Ill. State Bd. of Educ.*, 591 F.3d 896, 900 (7th Cir. 2010); *Hemmer v. Ind. State Bd. of Animal Health*, 532 F.3d 610, 614 (7th Cir. 2008); *Nat'l R.R. Passenger Corp. v. Pa. Pub. Util. Comm'n*, 342 F.3d 242, 257 (3d Cir. 2003). And despite its name, the Court of Claims is not actually a "court" within Illinois's judicial branch as defined by article VI of the Illinois Constitution. *People v. Philip Morris, Inc.*, 759 N.E.2d 906, 912 (Ill. 2001); *Reichert v. Court of Claims*, 907 N.E.2d 930, 933 (Ill. App. Ct. 2009). Created by the Illinois General Assembly as part of a limited waiver of the state's sovereign immunity, it is a "fact-finding body," *Rosetti Contracting Co. v. Court of Claims*, 485 N.E.2d 332, 334 (Ill. 1985), located in the legislative branch. *Philip Morris, Inc.*, 759 N.E.2d at 912. "It is in essence the legislature—the body called upon to fund any awards—that is deciding through the Court of Claims the merits of the claims before it." *Id.* (citation omitted). Thus, because a *judicial* disposition did not cause Sherrod's injury, *Rooker-Feldman* is inapplicable, and our jurisdiction is secure.

Though the judges of the Court of Claims are not members of the judicial branch, that does not resolve the question whether their function nonetheless absolutely immunizes them from suit for dismissing Sherrod's complaint. *See Heyde v. Pittenger*, 633 F.3d 512, 517 (7th Cir. 2011). Judicial immunity extends to non-judicial decision-makers, such as administrative law judges and hearing officers in executive agencies, who function like traditional judges even though they fall outside of the judicial branch. *Butz v. Economou*, 438 U.S. 478, 512–13 (1978); *see also Heyde*, 633 F.3d at 517 (concluding that members of Illinois county's Board of Review, which hears complaints from taxpayers challenging their property assessments, are entitled to judicial immunity for their decisions resolving appeals); *Killinger v. Johnson*, 389 F.3d 765, 770 (7th Cir. 2004) (upholding grant of judicial immunity to mayor for actions as local liquor control commissioner in closing bar). To determine whether decision-makers like the Court of Claims judges merit absolute immunity, we consider several factors centering on the fairness of the process they use in reaching their decisions, their level of independence from outside influence, and the need for protection from disappointed parties. *See Heyde*, 633 F.3d at 517.

In both substance and procedure, Court of Claims judges perform work warranting absolute immunity. In terms of substance, the judges "receive and resolve claims against the state," *Philip Morris, Inc.*, 759 N.E.2d at 912, by deciding adversarial disputes between opposing parties who have invoked the jurisdiction of that court. The Supreme Court has labeled the function of resolving disputes between opposing parties the "paradigmatic" judicial act. *Forrester v. White*, 484 U.S. 219, 227 (1988). And given the substantial amounts of property at stake in some of these cases, the disputes that the judges resolve are "every bit as fractious" as those decided in traditional courts of law, requiring protection from disgruntled litigants whose pursuit of vindictive, collateral litigation would jeopardize impartial decision-making of the court. *Butz*, 438 U.S. at 513.

In terms of procedure, the Court of Claims employs almost all of the safeguards of the adversary process that eliminate the need for damages actions to remedy unconstitutional behavior. In *Butz*, the Supreme Court identified several aspects of the process by which federal agencies decide cases that made absolute immunity appropriate for ALJ's and hearing examiners: the adversary nature of the proceedings in which opposing sides present their positions; the independence of the judges from executive pressure; the opportunity for full and fair hearings, where the arguments and testimony are transcribed and litigants can present different forms of evidence, including through subpoena power; and the requirement that the judges make a record of the reasoning of their decisions. *Id.* at 513. Like their federal-agency counterparts, Court of Claims judges preside over adversary proceedings during which litigants may present arguments and evidence, cross-examine witnesses, and invoke the court's subpoena powers. *See* ILL. ADMIN. CODE tit. 74, §§ 790.40(a), 790.120, 790.155(a), 790.210; *Zernel v. State*, 58 Ill. Ct. Cl. 214, 217 (2006). The judges also are neutral decision-makers: They serve six-year terms and do not belong to or act at the direction of any of the executive agencies responsible for defending the state in actions before them. *See* 705 ILCS 505/1, 505/2; ILL. ADMIN. CODE tit. 74, § 790.40(a); *Philip Morris, Inc.*, 759 N.E.2d at 912. Litigants before the Court of Claims receive a full, transcribed hearing. *See* ILL. ADMIN. CODE tit. 74, §§ 790.110, 790.120(a). Finally, the court issues written, published opinions when resolving cases in which the amount in controversy is $5,000 or greater, providing public accountability for its judgments. 705 ILCS 505/18.

Sherrod counters that the Court of Claims lacks at least two important procedural protections. He claims that it does not follow precedent of Illinois's appellate courts and that its merits decisions are unreviewable. On the first point, Sherrod is wrong; the Court of Claims applies the same precedents and common-law rules applicable in Illinois courts of law, except where they conflict with the controlling statute creating the Court of Claims. *Sallee v. State*, 42 Ill. Ct. Cl. 41, 54 (1990). On the second point, Sherrod is right, though his inference about immunity is wrong. The sole mechanism to appeal a Court of Claims

decision is a writ of certiorari to the Illinois Circuit Court, and the scope of certiorari review is limited to assessing whether the procedure employed by the Court of Claims denied the claimant due process. This makes only the merits of the Court of Claims' decisions unreviewable; the process *is* reviewable. *See Reichert v. Court of Claims*, 786 N.E.2d 174, 177 (Ill. 2003); *Reyes v. Court of Claims*, 702 N.E.2d 224, 231 (Ill. App. Ct. 1998). Thus certiorari review ensures that any errors during the proceedings before the court that offend the safeguards of due process can be corrected. *See, e.g., Dupree v. Patchett*, 838 N.E.2d 305, 307 (Ill. App. Ct. 2005); *Tanner v. Court of Claims*, 629 N.E.2d 696, 699 (Ill. App. Ct. 1994). In addition, decisions of the Court of Claims generally must garner the support of a four-member majority. 705 ILCS 505/16. This provides a further protection against individual errors in judgment. We thus conclude that the guarantee of certiorari review, combined with the statutory procedures employed in the Court of Claims, provides sufficient protection against arbitrary decisions to obviate the need for collateral suits like Sherrod's.

**AFFIRMED**.